**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| D. A. F., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO. 4:20-CV-79-CDL-MSH<br>28 U.S.C. § 2241 |
| | : | |
| Warden, STEWART DETENTION CENTER, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## ORDER AND RECOMMENDATION

Petitioner applied for habeas corpus relief under 28 U.S.C. § 2241 (ECF No. 1). Pending before the Court is Respondents' motion to dismiss (ECF No. 5) in lieu of a return. For the hereinbelow reasons, the Court recommends that Respondents' motion be granted. Also pending is Petitioner's emergency motion for hearing (ECF No. 6). Petitioner's motion is denied as moot.

## BACKGROUND

Petitioner is a native and citizen of Cuba. Pet. ¶ 19, ECF No. 1; Mot. to Dismiss Ex. A, at 1, ECF No. 5-2. On January 29, 2019, Customs and Border Patrol officers detained and processed Petitioner for expedited removal under 8 U.S.C. § 1225 (b)(1) after he applied for admission to the United States at El Paso, Texas. Pet. ¶ 20; Mot. to Dismiss Ex. A, at 2. Petitioner sought political asylum and withholding of removal, and an asylum officer determined Petitioner demonstrated a credible fear of persecution or torture. Pet. ¶

20. Mot. to Dismiss Ex. A, at 2; Mot. to Dismiss Ex. B, at 1, ECF No. 5-3. On February 20, 2019, the Department of Homeland Security served Petitioner with a Notice to Appear ("NTA") which alleged he was removable under 8 U.S.C. § 1182 (a)(7)(i)(I) as an alien who lacked a valid, unexpired immigrant visa or other entry document when applying for admission to the United States. Mot. to Dismiss Ex. B, at 1-2.

On June 24, 2019, Petitioner had a hearing before an immigration judge ("IJ"), and the IJ denied his requested relief and ordered him removed to Cuba. Pet. ¶ 21; Mot. to Dismiss Ex. C, at 1, ECF No. 5-4. On December 12, 2019, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Pet. ¶ 21; Mot. to Dismiss Ex. D, at 3-5, ECF No. 5-5. On December 27, 2019, Cuba issued a travel document for Petitioner. Campbell Decl. ¶ 7, ECF No. 5-1. On the same day, Petitioner filed a petition for review of the BIA's order affirming his removal order with the Eleventh Circuit Court of Appeals. *Id.* at ¶ 8. On January 21, 2020, Petitioner filed a motion to stay his removal with the Eleventh Circuit. Pet. Ex. A, at 2-18, ECF No. 1-1. The Eleventh Circuit granted his motion on January 24, 2020. Pet. Ex. B, at 2-3, ECF No. 1-2. On April 8, 2020, Petitioner filed a motion for bond determination hearing with an IJ. Pet. Ex. 3, at 2-7, ECF No.1-3. The IJ classified Petitioner as an "arriving alien" and denied bond on April 15, 2020. Resp. to Mot. to Dismiss Ex. A, at 2, ECF No.8-1. Petitioner's petition for review remains pending with the Eleventh Circuit.

Petitioner's applied for habeas corpus relief under 28 U.S.C. § 2241 (ECF No. 1) with this Court on April 21, 2020. Respondents timely filed a motion to dismiss (ECF No. 5) in lieu of a return on April 27, 2020. Petitioner filed an emergency motion for hearing

(ECF No. 6) on April 29, 2020. Respondents responded (ECF No. 7) to Petitioner's emergency motion for hearing on the same day. Petitioner responded (ECF No. 8) to Respondent's motion to dismiss on April 30, 2020, and replied (ECF No. 10) to Respondents' response to Petitioner's emergency motion for hearing on May 1, 2020. Both motions are ripe for review.

## DISCUSSION

### I. Respondents' Motion to Dismiss

Respondents move to dismiss on two grounds: (1) Petitioner is detained pursuant to 8 U.S.C. § 1231(a), and his habeas application is premature, and (2) even if Petitioner is detained pursuant to 8 U.S.C. § 1225(b), his detention comports with due process. Mot. to Dismiss 2-6, ECF No. 5. The Court recommends that Respondents' motion be granted on the first ground, and, in the alternative, that Respondents' motion be granted on the second ground.

A. Prematurity of Petitioner's Claim Under Section 1231(a)

Respondents argue Petitioner's detention is governed by 8 U.S.C. § 1231(a) because he is subject to a final order of removal. Mot. to Dismiss 3-4. Because Petitioner had been detained for less than six months when he filed habeas application, Respondents contend his application is premature. *Id.* The Court agrees and recommends that Respondents' motion to dismiss be granted on this ground.

*1. Section 1231(a) Detention Standards*

Under 8 U.S.C. § 1231(a), the Attorney General is afforded a ninety-day period to accomplish an alien's removal from the United States following the entry of a final order

of deportation or removal. 8 U.S.C. § 1231(a)(1)(A)-(B). During the 90-day period, Congress has mandated detention of the alien ordered removed. 8 U.S.C. § 1231(a)(2). Additionally, the ninety-day removal period may be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

The United States Supreme Court has found that section 241(a) of the INA authorizes detention after entry of an administratively final order of deportation/removal for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001). The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. *Id.* at 701. The Court of Appeals for the Eleventh Circuit explained that to be entitled to release under *Zadvydas*, an alien must show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (per curiam); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (per curiam) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

2. *Respondents' Motion*

Respondents argue Petitioner is detained pursuant to 8 U.S.C. § 1231(a) because his removal order became final on December 12, 2019—when the BIA dismissed his appeal of the IJ's removal order. Mot. to Dismiss 2-3 (citing 8 C.F.R. § 1241.1(a) (providing that a removal order becomes final, *inter alia*, "[u]pon dismissal of an appeal by the Board of Immigration Appeals")); *see* Mot. to Dismiss Ex. Mot. to Dismiss Ex. D, at 3-5 (BIA's order dismissing Petitioner's appeal of the IJ's removal order on December 12, 2019). Under section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")." Section 1231(a)(1)(B) provides that

> [t]he removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

According to Respondents, Petitioner must be detained under section 1231(a) because his removal order became administratively final and, consequently, the 90-day removal period began to run on December 12, 2019. 8 U.S.C. § 1231(a)(1)(B)(i).

Petitioner disagrees and argues his detention is governed by 8 U.S.C. § 1225(b). Pet. ¶ 36 n.1; Resp. to Mot. to Dismiss 2-4. He asserts he cannot be detained under section 1231(a) because the Eleventh Circuit has stayed his removal. Resp. to Mot. to Dismiss 2. Section 1231(a)(1)(B)(ii) provides that "if a court orders a stay of the removal," then the removal period does not begin until "the date of the court's final order." According to

Petitioner, "'the "removal period' has not yet started because the Eleventh Circuit has not yet issued a final order in Petitioner's case. This means that Petitioner's detention is still controlled by [section] 1225(b)." *Id.* (citing *Leslie v. U.S. Att'y Gen.*, 678 F.3d 265, 270 (3d Cir. 2012) ("[T]here can be little doubt that an alien, subject to and within a stay of removal, cannot yet be in the 'removal period' for § 1231 purposes.")). He contends that because he is not detained under section 1231(a), the *Zadvydas* presumptively reasonable six-month period does not apply, and his habeas application, therefore, is not premature under *Zadvydas*. Pet. ¶ 36 n.1; Resp. to Mot. to Dismiss 2. Accordingly, the Court must determine how, if at all, a judicial stay of removal alters the statutory authority governing an alien's post-final order of removal detention.

**i. Post-Stay-of-Removal Detention**

Respondents argue the Eleventh Circuit determined that an alien remains detained pursuant to section 1231(a) even if the Eleventh Circuit stays the alien's removal in *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002) (per curiam) ("*Akinwale II*"). Mot. to Dismiss 3-4. In *Akinwale II*, while petitioner was incarcerated due to a state criminal conviction, an IJ ordered him removed, and his order of removal became final. *Akinwale II*, 287 F.3d at 1051. When state authorities released petitioner from criminal incarceration, ICE detained him under section 1231(a) pursuant to his final order of removal. *Id.* After spending approximately two weeks in detention, petitioner filed a motion to stay his removal with the Eleventh Circuit. *Id.* at 1052 n.4. Approximately one month later, the Eleventh Circuit granted his motion and stayed his removal. *Id.* (citing *Akinwale v. Reno*, 216 F.3d 1273 (11th Cir. 2000) ("*Akinwale I*")). Petitioner filed a habeas application and

argued his detention had become unconstitutionally prolonged, but the district court dismissed his habeas application. *Id.* at 1051. On appeal of this dismissal, the Eleventh Circuit determined that petitioner was a removable alien detained under section 1231(a). *Id.* ("Federal law authorizes aliens removable for violations of criminal law, such as Akinwale, to be detained beyond the ordinary 90-day removal period." (citing 8 U.S.C. § 1231(a)(6))). Because *Zadvydas* held that detention of up to six months is presumptively reasonable, the Eleventh Circuit affirmed the dismissal because petitioner had only been detained for a total of four months when he filed his petition. *Akinwale II*, 287 F.3d at 1051-52.

In a footnote describing the effect of its stay of removal, the Eleventh Circuit provided an alternative holding for denying Plaintiff's motion as premature based on tolling of the removal period.

> In addition to the above deficiencies in his § 2241 petition, [petitioner] . . . interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. *See Akinwale v. Reno*, 216 F.3d 1273 (11th Cir.2000). [Petitioner] subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, [petitioner], unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. *See* 8 U.S.C. § 1231(a)(1)(C) (1999) (stating "removal period shall be extended . . . if the alien . . . acts to prevent the alien's removal subject to an order of removal"). Therefore, [petitioner] did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.

*Id.* at 1052 n.4. As Respondents suggest, courts in the Eleventh Circuit have cited this language in *Akinwale II* in holding that an alien remains detained under section 1231(a) even though the Eleventh Circuit stayed the alien's removal and that either the stay or the

mere filing of the petition for review, itself, tolls the statutory 90-day removal period and the *Zadvydas* six-month period. *See, e.g.*, *Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x. 894, 899 (11th Cir. 2016) (per curiam) ("The [*Zadvydas*] six-month period is tolled, however, if the alien acts to prevent his removal. . . . In the current matter, at the time [petitioner] filed his petition for review and his appellate brief he had not been detained in excess of six months . . . ." (citing *Akinwale II*, 1052 n.4.)); *Gozo*, 309 F. App'x at 346 ("[T]he removal period was tolled . . . when [petitioner] filed for withholding of removal, until . . . the IJ denied his request for such relief. [Petitioner] 'interrupted the running of time under *Zadvydas*' when he 'simultaneously challenge[d] issues related to his removal order and his post-removal period detention.'" (quoting *Akinwale II*, 1052 n.4.)); *Powell v. Holder*, No. 4:12-cv-3751-RDP-RRA, 2013 WL 2635490, at *2 (N.D. Ala. June 10, 2013) ("The *Zadvydas* presumptively reasonable six-month period for removal after issuance of a final order is tolled when an alien requests judicial review of a removal order and a court orders a stay of removal." (citing *Akinwale II*, 1052 n.4.)); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1363-64, 1364 n.4 (N.D. Ga. 2002) (holding that Petitioner's filing of a petition for review tolled the *Zadvydas* six-month period, but noting that such tolling may apply only when the Eleventh Circuit stays removal (citing *Akinwale II*, 1052 n.4.)).

For four reasons, Petitioner argues that the Court should not apply *Akinwale II* to hold that his detention remains governed by section 1231(a) even after the Eleventh Circuit stayed his removal. Pet. ¶ 36 n.1; Resp. to Mot. to Dismiss 2-4. First, he contends that under the plain language of section 1231(a), "the 'removal period' has not yet started because the Eleventh Circuit has not yet issued a final order in Petitioner's case." *Id.* at 2.

He argues that because section 1231(a)(1)(A) limits mandatory detention under this section to 90 days from the start of the removal period, holding that he is detained under 1231(a) even though the removal period has not commenced would, in effect, render this 90-day limitation meaningless. *Id.*; *see also id.* at 4 n.3. Instead, he maintains his "detention is still controlled by [section] 1225(b)." Resp. to Mot. to Dismiss 2.

Section 1231(a)(1)(B) provides, *inter alia*, "[t]he removal period begins on *the latest* of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[.]" (emphasis added). Petitioner does not dispute that his order of removal became administratively final on December 12, 2019, triggering the start of the removal period under section 1231(a)(1)(B)(i). *See* 8 C.F.R. § 1241.1(a) (providing that a removal order becomes final, *inter alia*, "[u]pon dismissal of an appeal by the Board of Immigration Appeals"). Then, the Eleventh Circuit undertook review of Petitioner's final order and stayed removal on January 21, 2020. Pet. Ex. A, at 2-18. Judicial review of a final order and stay of removal, however, are not triggering events under section 1231(a)(1)(B). At most, they are preconditions to a triggering event. Rather, entry of "*the court's final order*" is the triggering event which restarts the removal period under section 1231(a)(1)(B)(ii). (emphasis added). The Eleventh Circuit has not issued a final order on Petitioner's petition for review. Thus, under the plain language of section 1231(a)(1)(B), Petitioner is subject to a final order of removal, and the latest triggering event which started the removal period occurred on December 12, 2019—when his order of removal became administratively final.

Petitioner effectively argues that he became detained under section 1231(a) on December 12, 2019, but his detention reverted to section 1225(b) on January 21, 2020, when the Eleventh Circuit stayed his removal. In *Poole v. Streiff*, No. No. 07-00127-KD-B, 2007 WL 2083618 (S.D. Ala. July 18, 2007), the Southern District of Alabama rejected Petitioner's interpretation of section 1231(a). In *Poole*, petitioner was detained as a criminal alien under 8 U.S.C. § 1226(c). *Poole*, 2007 WL 2083618, at *1. An IJ ordered petitioner removed, his removal order became final when the BIA dismissed his appeal, petitioner filed a petition for review and motion for stay of removal with the Second Circuit, and the Second Circuit stayed his removal. *Id.* at *2-3. Petitioner filed a habeas application and "argue[d] that because an order has been entered by the Second Circuit staying removal . . . the removal period under [section 1231] has not commenced and thus [section 1231] and its interpretation by the Supreme Court in *Zadvydas* . . . are inapplicable to his request for relief." *Id.* at *1. Rather, he contended his detention was again governed by section 1226(c)—his pre-final order basis for detention—once the Second Circuit stayed removal. *Id.*

The Southern District of Alabama first held that Petitioner could not be detained pursuant to section 1226(c) because he was now subject to a final order of removal. *Id.* (citing *De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) ("Because a final removal order has been entered, [petitioner] is no longer being detained pursuant to § 1226(c), which governs *only* detention prior to a final removal order. Instead, he is being detained now pursuant to a wholly different statute, . . . [section] 1231(a), which controls the detention and removal of an alien subject to a final order of removal.")). The Court

discussed Petitioner's interpretation of section 1231(a) and rejected that interpretation:

> The petitioner is correct that his removal period has not commenced because of his appeal, but that does not change the fact that he is being detained pursuant to [section 1231]. Petitioner was detained pursuant to [section 1231] as soon as his removal order was administratively final, i.e., August 2, 2006. For at least thirty (30) days, that is, until he filed his appeal with the Second Circuit on August 31, 2006 and obtained a stay, petitioner's clock, which was set to the [section 1231] removal period, was ticking. By filing a timely appeal to the Second Circuit and obtaining a stay of the removal order the petitioner effectively reset the clock, i.e., the commencement period date, to the yet to be determined date of the Second Circuit's final order. However, the petitioner's request for judicial review did not make [section 1231] inapplicable. To construe [section 1231] otherwise would result in a petitioner moving in and out of the purview of [section 1231's] rules of detention based on his decision to seek judicial review. Moreover, to adopt petitioner's construction of [section 1231] would result in periods of time where there is no authority for detention, a result obviously not intended by Congress.

*Id.* This interpretation of section 1231(a)'s interplay with pre-final order of removal statutes is persuasive, and Petitioner fails to show why the Court should not similarly apply this reasoning to his pre-final order of removal detention under 1225(b).

Second, Petitioner asserts *Akinwale II* is distinguishable Pet. ¶ 36 n.1; Resp. to Mot. to Dismiss 3-4. He notes that the petitioner in *Akinwale II* had only been detained for four months before he filed his habeas petition, whereas Petitioner had been detained for over fourteen months. Pet. ¶ 36 n.1; *see Akinwale II*, 287 F.3d at 1051-52. This distinction is irrelevant, however, because, as the Eleventh Circuit held in *Akinwale II*, relief under *Zadvydas* depends only on the length of an alien's post-final order of removal detention—as opposed to total detention—and Petitioner's order of removal became final less than six months ago. *Akinwale II*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien . . . must show *post-removal order detention* in excess of six months . . . .

(emphasis added)). Petitioner also claims that *Akinwale II* is distinguishable because it did not concern a stay imposed "in the context of the 'removal order' being 'judicially reviewed.'" Resp. to Mot. to Dismiss 3-4 (quoting 8 U.S.C. § 1231(b)(ii)). Instead, in *Akinwale II*, the Eleventh Circuit stayed removal while considering his pending habeas application. *Akinwale II*, 287 F.3d at 1052 n.4. By contrast, here, the Eleventh Circuit stayed removal while considering a direct review of his final order of removal pursuant to a petition for review. Pet. Ex. B, at 2-3. Since *Akinwale II*, however, the Eleventh Circuit has more broadly applied this rule to other forms of appellate review of final orders of removal, including petitions for review like Petitioner's. *Guo Xing Song*, 516 F. App'x. at 899 (11th Cir. 2016) (per curiam) (petition for review (citing *Akinwale II*, 1052 n.4.)); *Gozo*, 309 F. App'x at 346 (withholding proceedings (citing *Akinwale II*, 1052 n.4.)); *see also Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (recognizing *Akinwale II* as an exception to other circuits' interpretation of section 1231(a)). Thus, although a petition for review was not at issue in *Akinwale II*, the principle of that case has been applied to Petitioner's circumstances.

Third, Petitioner argues the IJ found that Petitioner is an "arriving alien" under section 1225(b) in denying Petitioner's motion for bond on April 15, 2020. Resp. to Mot. to Dismiss 4; *see* Resp. to Mot. to Dismiss Ex. A, at 2 (IJ's denial of bond). However, determining which statutory basis for detention governs Petitioner's current detention is an issue of law, as opposed to a discretionary determination under 8 U.S.C. § 1226(e). *See, e.g.*, *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 179 (S.D.N.Y. 2009) ("While the Immigration and Nationality Act . . . precludes review of the 'Attorney General's

discretionary judgment' with regard to 'detention or release of any alien or the grant, revocation, or denial of bond or parole,' 8 U.S.C. § 1226(e), the United States Supreme Court rejected the contention that § 1226(e) deprives courts of jurisdiction to consider challenges to the interpretation of the mandatory detention statute.") (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003))). The IJ's conclusion that Petitioner is an "arriving alien" is not dispositive.

Fourth, Petitioner maintains that interpreting section 1231(a) to allow for tolling of the removal period after the Eleventh Circuit stays removal would effectively punish him for pursuing his remedies by forcing him to remain in detention during the pendency of the stay. Pet. ¶ 36 n.1. In support, he cites *Sopo v. United States Attorney General*, 825 F.3d 1199 (11th Cir. 2016). *Id.* As discussed more thoroughly below, in *Sopo*, the Eleventh Circuit held that criminal aliens detained under section 1226(c) have a due process right to avoid unreasonably prolonged detention without a bond hearing. *Sopo*, 825 F.3d at 1214. The Court also noted that in considering "why the removal proceedings have become protracted"—one factor among five in determining whether detention had become unreasonably prolonged under a particular statue—aliens "should not be punished for pursuing avenues of relief and appeals." *Id.* at 1218. Thus, *Sopo* stated merely that courts could not hold an alien's pursuit of a remedy against him in considering one of the five factors mentioned by that case. *Sopo* does not contemplate, as Petitioner seems to suggest, that courts should avoid such punishment by holding that an alien's pursuit of a remedy reverts his detention to an entirely different statute. As *Akinwale II* and its progeny hold, while Petitioner may certainly pursue these remedies, consistent with *Sopo*, that pursuit

cannot alter the statute governing his detention.

As Respondents note, in *Thompson v. Horton*, 4:19-cv-00120-AKK-HNJ, 2019 WL 4793170 (N.D. Ala. Aug. 26, 2019), *recommendation adopted by* 2019 WL 4750072 (N.D. Ala. Sept. 30, 2019), the Northern District of Alabama recently considered whether *Akinwale II*'s conclusion that an alien remains detained pursuant to section 1231(a) in spite of a stay of removal from the Eleventh Circuit remains good law. In *Thompson*, an IJ ordered petitioner removed, the BIA affirmed this decision, rendering his order of removal final, and after pursuing relief from multiple circuit courts, he filed a petition for review and motion for stay of removal with the First Circuit. *Thompson*, 2019 WL 4793170, *1-4. The First Circuit stayed his removal, and petitioner then filed a habeas application. *Id.* at *4. Petitioner argued his detention was governed by section 1226(c) because the First Circuit stayed his removal, and respondents argued his detention was governed by section 1231(a) under *Akinwale II*. *Id.*; *see also id.* at *7 ("Because the First Circuit granted a stay to review the BIA's denial of [petitioner's] latest motion to reopen, he argues that his removal period will not commence until the First Circuit rejects his motion to reopen and lifts its stay, which would ostensibly constitute a new final order of removal re-triggering his removal period.").

The Northern District of Alabama recognized that

> *Akinwale* [*II*] precludes [petitioner's] plain-meaning construal of § 1231: when immigration authorities issue administrative final orders of removal, any appellate challenge or stay of such orders tolls the § 1231 six-month period cognized in *Zadvydas*. That is, a [petition for review] or a stay stalls the § 1231 removal period, yet does not effect a reversion of the case's status back to § 1226.

*Thompson*, 2019 WL 4793170, *8. The Court then dismissed petitioner's many challenges to *Akinwale II*'s applicability. Petitioner argued the footnote constituted non-binding dicta, but the Court held that it was an alternative holding, which constitutes precedent in the Eleventh Circuit. *Id.* at *9-10 (citing *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1255-56 (11th Cir. 2017)). The Court noted that other circuits have rejected the Eleventh Circuit's approach in *Akinwale II*, but this does not change the case's precedential value in this circuit. *Id.* at *10. Finally, the Court found that dicta from Supreme Court decisions did not abrogate the rule in *Akinwale II*. *Id.* at *10-11 (citing *Jennings*, 138 S. Ct. at 838-39; *Nken v. Holder*, 556 U.S. 418, 429 (2009)). In no uncertain terms, the Court concluded "the disputed footnote in *Akinwale* [*II*] persists as Eleventh Circuit precedent which binds this court in its adjudication and applies to [petitioner's] entreaty." *Id.* at *11.

The Court agrees with this thorough analysis of the issue. Petitioner's arguments do not dissuade the Court from applying the Eleventh Circuit's interpretation of section 1231(a) in *Akinwale II*. Its alternative holding remains precedent, and it is supported by the plain language of section 1231(a).

**ii. Petitioner's Detention**

Here, because Petitioner's final order of removal has become final, he remains detained pursuant to section 1231(a). In *Zadvydas*, the Supreme Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. *Zadvydas*, 533 U.S. at 701. Thus, "in order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months." *Akinwale*, 287 F.3d at 1052. As in *Akinwale II*, Petitioner's six-month

presumptively reasonable removal period has not expired even if the Court held that the stay of removal did not restart his removal period. His removal order became final on December 12, 2019, when the BIA dismissed his appeal of his removal order. 8 C.F.R. § 1241.1(a); *see* Mot. to Dismiss Ex. D, at 3-5. Petitioner has been detained for under five months post-final order of removal. Thus, Petitioner cannot make the showing required by *Akinwale* and *Zadvydas*, and his habeas application should be dismissed without prejudice as premature.

B. <u>Constitutionality of Petitioner's Continued Detention Under Section 1225(b)</u>

Respondents also argue that even if Petitioner is detained as an arriving alien pursuant to 8 U.S.C. § 1225(b), his detention comports with due process. Mot. to Dismiss 4-6. The Court agrees and recommends that Respondents' motion to dismiss be granted on this ground in the alternative.

*1. Section 1225(b) Detention Standards*

An inadmissible alien who entered the United States at a port-of-entry without required documentation is classified as an "arriving alien." 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1225(b)(1); 8 C.F.R. §§1.2, 1001.1(q). Detention of an arriving alien pending completion of removal proceedings is statutorily mandated, even if an asylum officer determines the alien has a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV); *Jennings v. Rodriguez*, --U.S.--, 138 S.Ct. 830, 842 (2018) (finding the "clear language" of section 1225(b)(1) mandates detention of aliens claiming a credible fear of persecution). The only exception is that the Attorney General may—in his discretion—release such alien on parole. 8 U.S.C. § 1182(d)(5)(A).

In *Jennings v. Rodriguez*, the Supreme Court rejected application of the canon of constitutional avoidance to read into the statute an implicit six-month limit on detention. *Jennings*, 138 S.Ct. at 842-845. Instead, the Court concluded the statute mandated detention until "the completion of applicable proceedings." *Id.* at 845. Nevertheless, the Court left open whether prolonged detention of arriving aliens without a bond hearing would violate the Due Process Clause of the Fifth Amendment. *Id.* at 851-52.

*2. Arriving Aliens' Due Process Rights*

Since *Jennings*, courts have addressed whether prolonged detention of arriving aliens without a bond hearing violates due process. There are few relevant decisions from courts in this circuit, and none from the Eleventh Circuit. Outside this circuit, courts have adopted different approaches. Some courts have concluded that for arriving aliens "due process is whatever procedure has been authorized by Congress." *Poonjani*, 319 F. Supp. 3d, at 648 (internal quotation marks omitted); *see also Gonzalez Aguilar v. McAleenan*, No. 19-cv-0412 WJ/SMV, -- F. Supp. 3d--, 2020 WL 1429673, at *5-7 (D.N.M. Nov. 8, 2019) (concluding arriving alien was entitled only to the rights provided by "the applicable statutory process"). In their view, "the Constitution extends no farther than [the] statutory language itself." *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018). Because arriving aliens lack a statutory right to bond, they also lack a due process right to bond. *Id.*; *see also Gonzalez Aguilar*, 2019 WL 5864821, at *9 (finding that because petitioner's "statutory rights are coextensive with her procedural-due-process rights," she

was not entitled to a bond hearing).[1] These courts conclude that the discretionary parole procedure under 8 U.S.C. § 1182(d)(5)(A) constitutes the extent of an arriving alien's procedural rights. *Poonjani*, 319 F.3d at 648-49; *Gonzalez Aguilar*, 2019 WL 5864821, at *6.

Other courts have concluded that arriving aliens have some base level of due process rights beyond those provided by Congress, even if those rights are not as robust as those provided to aliens with stronger ties to the country—such as lawful permanent residents. In the Second Circuit, many district courts have applied a multi-factor test to determine if the detention is unreasonable. *See, e.g.*, *Perez v. Decker*, No. 18-CV-5279(VEC), 2018 WL 3991497, at *4 (S.D.N.Y. Aug. 20, 2018) (applying multi-factor test originally applied to detention under 8 U.S.C. § 1226(c)). Some courts applying this test have determined that when it comes to length of detention, arriving aliens should be treated the same as other categories of aliens. *See Perez*, 2018 WL 3991497, at *5 (finding that nine-month detention surpassed six-month threshold applied in § 1226(c) cases); *Lett v. Decker*, 346

[1] Courts adopting this approach rely primarily on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953). In *Mezei*, an alien who lived in the United States for approximately twenty-five years left the country to travel to Europe for two years. *Mezei*, 345 U.S. at 208. Upon his return, he was denied entry for security reasons and detained on Ellis Island, New York. *Id.* Refused entry by all other countries, he remained in detention until the district court ordered his release under a parole bond. *Id.* at 208-09. The Second Circuit affirmed. *Id.* at 209. The Supreme Court, however, reversed, concluding that although aliens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," an alien "on the threshold of initial entry stands on a different footing." *Id.* at 212. The Court held that, for such aliens, due process amounts to "[w]hatever the procedure authorized by Congress is." *Id.* The Court then concluded that because detention on Ellis Island did not constitute entry into the United States and statutes in effect at the time authorized his detention without bond, Mezei's confinement on Ellis Island did not violate his due process rights. *Mezei*, 345 U.S. at 215.

F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("[W]hen it comes to prolonged detention, the Court sees no logical reason to treat individuals at the threshold of entry seeking asylum under § 1225(b) . . . differently than other classes of detained aliens."). The Ninth Circuit has also applied this approach. *Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1142-43 (9th Cir. 2020) (holding that a district court did not err in granting a preliminary injunction to a class of section 1225(b) detainees because "plaintiffs were likely to succeed on their claim that they are constitutionally entitled to individualized bond hearings before a neutral decisionmaker")

As noted, there is no Eleventh Circuit case law on this issue.[2] The closest is *Sopo*. In that case, the Eleventh Circuit applied the canon of constitutional avoidance to conclude that there is an implicit temporal limitation against unreasonably prolonged detention without a bond hearing of criminal aliens detained under 8 U.S.C. § 1226(c). *Sopo*, 825 F.3d at 1214. In determining whether a criminal alien's due process rights have been violated, the Court rejected a bright-line rule and instead adopted a case-by-case approach, noting that "reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all circumstances of any given case." *Id.* at 1215 (quotation marks omitted). The Court identified five factors for courts to consider. *Id.* The first is the length of detention, with the Court suggesting that "a criminal alien's detention may often become unreasonable by the one-year mark, depending on the facts of the case." *Id.* at 1217. The

[2] One district court in this circuit, however, has agreed with those courts concluding that arriving aliens have no Fifth Amendment due process rights when it comes to their detention. *Dini v. Warden, Etowah Det. Ctr.*, No. 4:19-cv-01065-RDP-JEO, 2019 WL 4888018, at *2 (N.D. Ala. Oct. 3, 2019).

second factor is a consideration of "why the removal proceedings have become protracted." *Id.* at 1218. The Court noted that while a criminal alien "should not be punished for pursuing avenues of relief and appeals," district courts should consider whether the alien has "sought repeated or unnecessary continuances" or acted in bad faith to delay proceedings. *Id.* The Court also identified three other factors, including whether removal of the criminal alien would be possible once a removal order became final, whether the civil detention period exceeded the time the alien spent in prison for the crime rendering him removable, and whether the facility where he was detained was "meaningfully different from a penal institution for criminal detention." *Sopo*, 825 F.3d at 1218. Finally, the Court stated its list was "not exhaustive" and that the factors should vary depending on the facts of each case. *Id.*

*Sopo* is of limited utility in assessing Petitioner's due process claim. For one, it was later vacated. *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (2018). It is no longer binding precedent in this circuit. Second, at least two of the factors—the latter two listed above—do not apply to section 1225(b) detainees. Third, and most significantly, it addressed due process rights in the context of a petitioner who—while having been convicted of a crime—had been granted asylum and, thus, attained legal status. *Sopo*, 825 F.3d at 1203. The Eleventh Circuit provided no insight on whether such protections apply equally to arriving aliens who are merely on the threshold of initial entry.

Petitioner argues the Court should hold that arriving aliens have due process rights. Pet. ¶¶ 29-34; Resp. 4-5. He also asserts the Court should adopt a bright-line rule that arriving aliens are entitled to a hearing after six months of detention. Pet. ¶¶ 35-37; Resp.

5. In the alternative, he suggests the Court should hold that arriving aliens are entitled to a hearing when their detention becomes unreasonably prolonged under the specific facts of their cases. Pet. ¶ 38; Resp. 5. Respondents argue that even if Petitioner has a due process right to avoid unreasonably prolonged detention, his detention does not violate this standard. Mot. to Dismiss 4-6. This Court agrees that arriving aliens, such as Petitioner, have at least some base level of due process rights against unreasonable detention. *See Clerveaux v. Searls*, 397 F. Supp. 3d 299, 315-20 (W.D.N.Y. 2019) (rejecting a literal interpretation of *Mezei* that would deprive arriving alien of all due process rights). At the same time, though, the Court concludes the length of their detention must be longer than that of non-arriving aliens before being deemed unreasonable. Otherwise, there would be no meaningful distinction between those who have attained legal status and those who have not. This would contradict clearly established Supreme Court precedent. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). Other district courts agree. *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 857-58 (D. Minn. 2019) ("The Court is inclined to agree with the government that arriving aliens detained under § 1225(b)(2)(A) receive less robust due-process protection than criminal aliens detained under § 1226(c)."); *Damus v. Tsoukaris*, No. 16-933 (JLL), 2016 WL 4203816, at *4 (D.N.J. Aug. 8, 2016), *abrogation on other grounds recognized*

*by Otis v. v. Green*, No. 18-742 (JLL), 2018 WL 3302997, at *6 (D.N.J. July 5, 2018) (noting this distinction is "one of magnitude rather than entitlement to relief" and that an arriving alien may be "held for a greater length of time").

The Court, however, rejects the bright-line approach initially suggested by Petitioner. Although vacated opinions are void and do not constitute binding precedent, they constitute persuasive authorities. *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009). In *Sopo*, the Eleventh Circuit rejected a bright-line approach to determine whether a section 1226(c) detainee's detention had become unreasonably prolonged. *Sopo*, 825 F.3d at 125 ("[R]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all circumstances of any given case." (internal quotation marks omitted)). Because the Eleventh Circuit rejected the bright-line approach for section 1226(c) detainees—who enjoy *some* status—the Court finds this reasoning persuasive as applied to section 1225(b) detainees also. Therefore, the Court will not apply a bright-line rule to arriving aliens, since those individuals "on the threshold of initial entry stand[] on a different footing" than those who have entered the United States. *Mezei*, 345 U.S. at 212. Instead, the Court must determine on a case-specific basis whether Petitioner's detention has become unreasonably prolonged. Other courts have adopted a similar approach. *See Rodriguez-Figueroa v. Barr*, --F. Supp. 3d --, 2020 WL 967486, at *8-13 (W.D.N.Y. Feb. 28, 2020) (applying factorial analysis to determine whether alien's bond had become unreasonably prolonged); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117-18 (W.D. Wash. 2019) (same); *Jamal*, 358 F. Supp. 3d at 859 (same).

*3. Petitioner's Detention*

Here, Petitioner has been detained for a little over fifteen months since he was apprehended on January 29, 2019. He argues this is a lengthier detention than the presumptively reasonable period of six months to one year identified in *Sopo*. Pet. ¶¶ 38-39; Resp. to Mot. to Dismiss 5. This Court, however, addressed a nearly identical situation in *L.K. v. Department of Homeland Security*, No. 7:19-cv-16-WLS-MSH, R. & R. (M.D. Ga. Jan. 24, 2020), ECF No. 22, *recommendation adopted by* Order 1-5, ECF No. 26 (M.D. Ga. Mar. 27, 2020). There, the Court held that fifteen months of detention failed to rise to the level of unreasonably prolonged detention. *Id.* at 12-14 ("While this Court does not endeavor to suggest a specific trigger point at which an arriving alien's detention becomes unreasonably prolonged, fifteen months is insufficient under the facts of this case." (citing *Yacouba v. Decker*, No. 18-13879 (JLL), 2019 WL 1569823, at *3 (D.N.J. Apr. 10, 2019) (finding detention for just over fifteen months insufficient to trigger due process detention limitations))); *see also Traore v. Decker*, No. 19-cv-4612(ALC), 2019 WL 3890227, at *5 (S.D.N.Y. Aug. 19, 2019) (finding twenty-month detention not unreasonable in light of petitioner's filing of multiple motions and I-130 petition); *Fatule-Roque v. Lowe*, No. 3:17-CV-1981, 2018 WL 3584696, at *5 (M.D. Pa. July 26, 2018) (finding fifteen-month detention not unreasonable in light of petitioner's filing of multiple motions to continue immigration hearings and to correct an error in an I-360 application). Fifteen months is only three months longer than the one-year detention *Sopo* found would be at "the outer limits of reasonableness" for aliens with legal status. *Sopo*, 825 F.3d at 1217.

Additionally, the Court notes that since Petitioner was detained on January 29, 2019,

his immigration case has not simply sat idle. The IJ denied bond on June 25, 2019. Mot. to Dismiss Ex. C, at 1. Petitioner, however, failed to file an appeal with the BIA until July 22, 2019—nearly one month later. Campbell Decl. ¶6. Petitioner's petition for review is pending, and he is in the final step of removal proceedings. Also, Petitioner is already subject to a final order of removal. The BIA dismissed Petitioner's appeal on December 12, 2019. Mot. to Dismiss Ex. D, at 3-5, ECF No. 5-5. Only fifteen days later, on December 27, 2019, ICE secured a travel document for Petitioner. Campbell Decl. ¶ 7. Only then did Petitioner file a petition for review with the Eleventh Circuit. *Id.* Thus, Petitioner will likely be removed very soon after the Eleventh Circuit lifts his stay of removal because ICE has already succeeded in securing Petitioner's travel document once.

Petitioner contends that the Eleventh Circuit's decision to stay his removal indicates he has raised a good-faith challenge to his order of removal. Pet. ¶ 39. If he does not receive a bond hearing, he asserts he will remain detained for another year. Pet. ¶ 39. The fact that Petitioner raised his challenge in good faith does not change the Court's conclusion that his fifteen-month detention does not rise to the level of unreasonably prolonged. Additionally, he cites no basis for his conclusory allegation that he will be detained for another year. His petition for review has already been pending for four months. Finally, Petitioner states that he is susceptible to COVID-19 and will likely contract the illness if he remains detained. Pet. ¶ 2; Mot. for Hearing 1, ECF No. 6; Reply to Resp. to Mot. for Hearing 2-3, ECF No. 10. To the extent Petitioner attempts to challenge the conditions of his confinement arising from COVID-19 and his susceptibility thereto, this claim is not cognizable in habeas corpus, and the Court lacks jurisdiction to

grant Petitioner relief. *A.S.M. v. Donahue*, No. 7:20-cv-62, 2020 WL 1847158, at *1-2 (M.D. Ga. Apr. 10, 2020). Similarly, it is not a factor demonstrating that detention has become unreasonably prolonged. Even assuming Petitioner's conclusory allegation is true, he cites no authority showing the Court may consider the conditions of his confinement in determining whether his detention has become unreasonably prolonged.

The Court finds no reason to depart from its reasoning in *L.K.* In the alternative, therefore, the Court recommends denying Petitioner's application for habeas relief on due process grounds if his detention is governed by section 1225(b).

**II. Petitioner's Emergency Motion for Hearing**

On April 29, 2019, Petitioner filed a motion for an emergency hearing (ECF No. 6), arguing that he is susceptible to COVID-19 and that he is likely to become infected while in ICE custody. Mot. for Hearing 1. On the same day, Respondents filed a response, arguing Petitioner is not entitled to a hearing. Resp. to Mot. for Hearing 1-3, ECF No. 7. On April 30, 2020, the Court ordered Petitioner to supplement his motion, noting that Petitioner's susceptibility to COVID-19 was not a basis to hold an evidentiary hearing on his habeas petition because a claim based on conditions of confinement related to COVID-19 is not cognizable in habeas. Order 1-2, ECF No. 9 (quoting *A.S.M.*, 2020 WL 1847158, at *1-2.). Petitioner filed a reply (ECF No. 10) to Respondents' response on May 1, 2020. Therein, Petitioner contends "Petitioner's exposure risk [to COVID-19] is a relevant factor in determining whether his detention is 'prolonged' and thus deserving of review." Resp. 2, ECF No. 10.

As noted above, Petitioner cites no authority showing that conditions of his

confinement and his health are factors the Court should consider in determining whether his detention has become unreasonably prolonged. The Court assumes Petitioner's allegations are true, but they do not raise a factual dispute justifying a hearing. Because the Court recommends that Respondents' motion to dismiss (ECF No. 5) Petitioner's habeas application (ECF No. 1) be granted, a hearing is unnecessary. Petitioner's motion is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, the Court recommends that Respondents' motion to dismiss (ECF No. 5) be granted. Petitioner's motion for hearing (ECF No. 6) is denied as moot. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1s, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO RECOMMENDED, this 8th day of May, 2020.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE